JULIA McKENNA, PLAINTIFF-APPELLANT, v. MONTCLAIR POLICE AND FIREMEN'S PENSION COMMISSION, A CORPORATION, AND GEORGE S. COURTER, TOWN TREASURER OF THE TOWN OF MONTCLAIR, DEFEND-ANTS-RESPONDENTS.

Submitted May 3, 1938—Decided October 11, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the plaintiff-appellant, *Thomas Brunetto.*

For the defendants-respondents, *George S. Harris* (*Charles H. Hanks,* on the brief).

BROGAN, CHIEF JUSTICE. The plaintiff-appellant appeals from a judgment for the defendants entered upon a directed verdict. The appellant is the widow of John McKenna, deceased, who, at the time of his death, was a member in good standing of the Montclair paid firemen's pension fund.

It is alleged that on September 28th, 1917, the decedent died as a result of tuberculosis, contracted in the performance of his duty, and that under the then pertinent statute (chapter 65, *Pamph. L.* 1905, *p.* 114), his widow became entitled to a pension equal to one-half of the salary which he had received; that upon his death Mrs. McKenna demanded a pension which was refused by the pension fund committee; that suit was brought on May 3d, 1919, to obtain the pension moneys due up to that time; that on April 27th, 1920, she received $815 in settlement, as she says, of the sum then due as pension; that suit was then discontinued. The case now before us was begun on January 25th, 1936, no action having been taken by the plaintiff since 1920, and demand is made for accrued pension moneys.

In the main, it is alleged by the answer and defenses that in 1920, a settlement was made and the appellant executed a general release relieving defendant of all further claims as far as appellant was concerned. On the sole ground that the release given the defendants by the appellant was efficacious and binding, the trial court directed verdict for defendants.

The appellant attacks this ruling on two grounds—first, that the release was void as against public policy, and, second, that in any event the validity of the release was a fact issue in the case and should have been submitted to the jury for determination. There is no merit in either contention.

As to the first—that the release was void because against public policy—the appellant merely cites cases which hold that the provisions of the pension statute should be construed liberally. *Bederski* v. *Policemen's and Firemen's Pension Fund of Newark,* 4 *N. J. Mis. R.* 637; *affirmed,* 104 *N. J. L.* 163, and *Ghesquier* v. *Fire and Police Pension Fund of Paterson,* 117 *Id.* 327. These cases are neither applicable nor controlling.

It is also urged under this point that legislation providing for pension is comparable in character and purpose to workmen's compensation legislation and that under the Employers' Liability act of 1911 there could be no commutation of installment payment compensation until the legislature authorized it in 1913. Therefore, it is argued that the appellant might not accept less than her full quota of pension. There is no parallel in the example cited. A competent tribunal, under the statute, always has control over the amount paid an injured workman in settlement of his claim, and by the statute (*Rev. Stat.* 34:15-22) acceptance of a lesser sum shall not be a bar to the recovery of the amount justly due; nor may there be commutation save by order of the court. *Rev. Stat.* 34:15-25. No such provisions as these are made part of the statute under which appellant makes claim for pension, *supra,* nor of the superseding act of 1920, with its supplement and amendments. *Rev. Stat.* 43:16 *subtitle* 6.

The appellant has never established her right to a pension. She brought suit to accomplish that purpose in 1919, but settled her claim for a consideration, which was paid, and by release discharged the defendant from liability. The issue raised in that case was never determined.

As to the second question—that the validity of the release as such was an issue of fact and should have been submitted to the jury—the proof was that in 1919 appellant's then counsel told her that he was uncertain about the outcome of her suit against the pension commission and could settle it. Upon her acquiescence, he drew the release and she executed it before him. The appellant testified that the attorney did not read the paper to her but just said, "sign it," which she did. On cross-examination, she further testified, "he [her then attorney] said this was all he could get at that time and I thought I was signing for the little money that was standing out." The witness said that she was illiterate and could read and write but little.

It is elementary law that a valid release of a claim is a bar to further action looking to recovery, and this we think is a

valid release. When one challenges a release in a court of law that challenge must necessarily be based on the fraud or deceit of the party to be charged in procuring its execution and not upon the failure of the claimant to appreciate the effect of his act in signing it. *Vellekoup* v. *Fullerton & Co.,* 79 *N. J. L.* 16. No evidence appears in the case that there was misrepresentation as to the contents of the release or in its execution. If neither of these elements was present, the validity of the release cannot be assailed in a court of law. Compare *Alexander* v. *Brogley,* 63 *Id.* 307; *Dunston, &c.,* v. *Borgo,* 84 *Id.* 623; *McDonald* v. *C. R. R.,* 89 *Id.* 251.

The general rule, as we understand it, is that when a party executes a written contract, *e. g.,* a release, a conclusive presumption arises against the party executing the same that he read, understood and assented thereto, unless it can be shown that the signature was obtained by fraud or imposition practiced upon the party signing, with intent to deceive as to the purport of the paper signed. *Dunston, &c.,* v. *Borgo, supra.*

The appellant's present position that she did not know that for the consideration paid she bartered away her cause of action against the defendant is entirely irrelevant. The fact also that she made no claim on the defendant from 1920, when she accepted a settlement, until 1936, is too significant to be misunderstood.

The judgment will be affirmed.